**OPERATING ENGINEERS PENSION TRUST, et al., Plaintiffs,**

v.

**Carroll E. WILSON and Patricia J. Wilson, individually and dba Wilson Equipment, a partnership, Defendants–Third–Party Plaintiffs–Appellees,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 12, AFL–CIO, Third–Party Defendants–Appellants.**

No. 88–6559.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 31, 1989.

Decided Oct. 2, 1990.

Anthony R. Segall, Reich, Adell & Crost, Los Angeles, Cal., for third party defendants-appellants.

Richard M. Freeman, Dennis Childs, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for defendants-third party plaintiffs-appellees.

Before HUG and CANBY, Circuit Judges, and EZRA,* District Judge.

* The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

HUG, Circuit Judge:

This case involves an action brought by various union welfare trust funds against the Wilsons, alleging that they failed to pay fringe benefit contributions under a collective bargaining agreement. The Wilsons answered, contending that the contract was void because the union business agent had induced Carroll Wilson to sign the agreement by fraudulent representations. The Wilsons also filed a third-party complaint against appellant International Union of Operating Engineers, Local No. 12 ("Local 12") on various state and federal law theories. After a jury responded to interrogatories and rendered a special verdict, the district judge entered judgment for the Wilsons against the union trust funds, invalidating the collective bargaining agreement and assessing attorneys' fees. A judgment against Local 12 for damages on a state law claim for fraudulently inducing the execution of the agreement, and a judgment against both for attorneys' fees was entered. Local 12 appeals; the trust funds do not. The principal issue in this appeal is whether the Wilsons' claim against Local 12 for fraudulent inducement to enter into a contract is preempted by section 301 of the National Labor Relations Act. We hold it is not and affirm the judgment.

## I. FACTS

The Wilsons are owners of Wilson Equipment Company. Although Wilson Equipment Company was a non-union shop, Carroll Wilson had been a member of Local 12 for five years prior to the dispute at issue. In May, 1982, Carroll Wilson, acting in his capacity as co-owner of Wilson Equipment Company, was removing dirt from a local jobsite. Wilson had secured permission from the project's general contractor to remove the dirt from the jobsite. While in the process of removing the dirt, Wilson was approached by Hoss Kinsey, a business representative of Local 12. The conversation that ensued forms the basis of this litigation.

It is undisputed on appeal that Kinsey told Wilson that everyone working at the jobsite had to be "union," and that Wilson could not continue removing the dirt unless he signed certain forms. Wilson also asked Kinsey if signing the forms would change his status with Local 12. Kinsey told Wilson it would not. Wilson then signed the forms on the hood of Kinsey's car without reading them.

Both of Kinsey's statements were false. Wilson did not need to sign an agreement with Local 12 in order to continue removing the dirt from the jobsite. Further, the agreement signed by Wilson did, in fact, change his status with the union. The agreement made Wilson a party to an owner-operator agreement, requiring the Wilsons to pay their employees union wages and contribute to employee benefit trust funds. An owner-operator agreement allows a member of Local 12 to operate a piece of heavy equipment to which he holds title. When the owner-operator hires other employees, the agreement operates as a short-form collective bargaining agreement. At the time Wilson signed the owner-operator agreement, he had three full-time employees.

The Wilsons did not make the contributions to the trust funds as required by the agreement. As a result, the Operating Engineers Pension Trust, Operating Engineers Health and Welfare Fund, Operating Engineers Vacation–Holiday Savings Trust, and Operating Engineers Training Trust ("the Trusts") brought an action against the Wilsons to collect the delinquent contributions. The Wilsons answered and filed a third-party complaint against Local 12 and Kinsey. The claims against Kinsey were dismissed by stipulation of the parties before trial.

Local 12 filed various motions, seeking dismissal of the Wilsons' fraud claim because it was preempted by federal labor law. In ruling on Local 12's preemption motions, the district court distinguished between the two misrepresentations made by Kinsey to Wilson during their conversation at the jobsite. The court found that Kinsey's first statement, that Wilson had to be "union" in order to remove dirt from the jobsite, was properly characterized as

fraud in the inducement. The court went on to hold that the Wilsons' action for fraud in the inducement was not preempted by federal labor law and found this claim to be a proper subject of a pendent state law claim. The court next characterized Kinsey's second statement, that the agreement would not affect Wilson's status with the union, as fraud in the execution. Unlike the Wilsons' fraud in the inducement claim, the district court found that this claim was preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and, thus, was treated as a section 301 claim.

The jury was instructed accordingly and was given a series of interrogatories and a special verdict, upon which the judge based his judgment. The responses to the interrogatories, pertinent to this appeal, were as follows:

> QUESTION NO. 5: Do you find that Carroll Wilson was induced to sign the "Owner–Operator Short Form Collective Bargaining Agreement" by an *intentional* false representation knowingly made by Earvin Kinsey, or by another person in his presence and intentionally adopted by Earvin Kinsey with knowledge of its falsity, that Carroll Wilson could not remove dirt from the site unless he signed the agreement? (Emphasis in original.)

> Answer: YES

> QUESTION NO. 6: Do you find that Carroll Wilson actually and justifiably relied on the representation you have found in Question No. 5 above?

> Answer: YES

> QUESTION NO. 8: Do you find that the Wilsons sustained damages as a proximate result of the conduct you have found in Question No. 5 above in any one or more of the following categories: lost time defending trusts claims, emotional distress, indemnity for trusts claims, or attorney's fees in defense of trusts claims?

> Answer: YES

> QUESTION NO. 9: What damages do you find will compensate the Wilsons for the conduct you have found in Question No. 5 above? This amount should only include lost time and emotional distress, if any, sustained by the Wilsons. (The court will determine any award for indemnity and/or attorney's fees, depending upon your answers to these questions.)

> Answer: $200,000

The district judge entered a judgment against the Trusts on their claim for contributions to the employee benefit funds, and a judgment of $200,000 on the Wilsons' claim against Local 12 for fraudulent inducement. A judgment was also entered against the Trusts and Local 12 for $137,-600 in attorneys' fees. The Trusts have not appealed the judgment against them. Local 12 appeals the judgment against it.

The claim, based upon Kinsey's statement that signing the forms would not change his status with Local 12, categorized as a fraud in the execution claim, was held to be preempted by section 301 and was also submitted to the jury with interrogatories under pertinent instructions. We need not delve into the issues concerning this claim because the judgments entered by the district court were based upon the fraud in the inducement claim. Thus, we direct our attention to that claim.[1]

## II. *DISCUSSION*

We consider whether the Wilsons' state tort claim for fraud in the inducement was preempted by federal labor law. We review this question of law *de novo.* *Bale v.*

---

1. We note that the award of attorneys' fees was joint and several against the trusts and Local 12. The award against the Trusts was based upon 29 U.S.C. § 1132(g)(1) (1988) and against Local 12 as consequential damages for the fraud. Although the court mentioned both fraud in the inducement and fraud in the execution in assessing the attorneys' fees, the difference in the fees, eliminating the alternate theory, would be

de minimus. Furthermore, the damages award of $200,000 was based upon the special verdict of the jury, which was on the claim of fraudulent inducement. The award of the attorneys' fees would presumably follow the claim on which the $200,000 award was made. Local 12 does not contest the amount of the attorneys' fees nor the grounds upon which they were awarded.

*General Tel. Co. of Cal.,* 795 F.2d 775, 778–79 (9th Cir.1986).

## 1. *Section 301 Preemption*

Local 12 contends that the Wilsons' claim for fraud in the inducement was preempted by section 301 of the LMRA. It is well-settled that state law claims concerning conduct covered by the terms of a collective bargaining agreement are preempted by section 301 of the LMRA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985). In *Lueck,* the Supreme Court framed the test for preemption of a state tort claim as whether the tort "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract." *Id.* at 213, 105 S.Ct. at 1912. More recently, the Court held that "application of state law is pre-empted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988).

█ Based upon these principles, the district court found that the Wilsons' tort action for fraud in the inducement was not preempted by section 301 because it did not require reference to the owner-operator agreement signed by Wilson. We agree.

The Wilsons' action for fraud in the inducement is predicated upon Kinsey's assertion that Wilson had to sign the owner-operator agreement in order to continue removing dirt from the jobsite. To show fraud the Wilsons' had to put forth sufficient facts to prove "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Cicone v. URS Corp.,* 183 Cal.App.3d 194, 201, 227 Cal.Rptr. 887, 890 (Cal.Ct.App. 1986). *See also* Cal.Civ.Code § 1710 (West 1985). Each of these inquiries did not require interpretation of the collective bargaining agreement. Thus, as in *Lingle,* "the state-law remedy in this case is 'inde-

pendent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882.[2] We therefore hold that Wilson's action for fraud in the inducement was not preempted by section 301 and was properly brought as a pendent state claim.

Local 12 contends that the doctrine enunciated in *Lingle* is a mere benchmark for section 301 preemption and argues that section 301 preempts state law in all matters that pertain to the formation of collective bargaining agreements. This argument is not supported by the pronouncements of the Supreme Court.

In *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962), the Court focused on the terms of the collective bargaining agreement and emphasized that "[o]nce the collective bargain was made, the possibility of conflicting substantive interpretation ... would tend to stimulate and prolong disputes as to its interpretation." In *Lueck,* the Court again focused on the terms of the collective bargaining agreement and evaluated whether "the tort claim was inextricably intertwined with consideration of the terms of the labor contract." *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912.

The *Lingle* decision continued to emphasize that it is the possible state interference with consistent *interpretation* of a collective bargaining agreement that evokes preemption. *Lingle,* 486 U.S. at 405–06, 108 S.Ct. at 1881–82. In reasoning that Lingle's tort action for retaliatory discharge was not preempted by section 301, the Court defined the boundaries of section 301 preemption, succinctly stating: "In sum, we hold that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a

---

**2.** Such independence was not present in either *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 1001 (9th Cir.1987) or *Bale,* 795 F.2d at 780.

In both of these cases, resolution of the plaintiff's fraud claim required construing the relevant collective bargaining agreement.

collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885.[3]

Local 12 also argues that our decision in *Rozay's Transfer v. Local Freight Drivers*, 850 F.2d 1321 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989) compels us to find section 301 preemption. In *Rozay's*, the employer brought an action against the union alleging that the union fraudulently induced it to execute a collective bargaining agreement. *Id.* at 1323. The employer in *Rozay's*, unlike the Wilsons here, brought its action pursuant to section 301 of the LMRA. *Id.* at 1325. Thus, there was no issue of whether a state action was preempted. The preemption issue in *Rozay's* was whether the action was in the exclusive jurisdiction of the NLRB and therefore preempted by the *Garmon* doctrine. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). In holding that the district court had jurisdiction pursuant to section 301, we noted that "[s]ection 301, moreover, applies not only to suits for breach of a collective bargaining agreement once it is duly formed, but also to suits impugning the existence and validity of a labor agreement." *Rozay's*, 850 F.2d at 1326.

Thus, because we have held that an action for fraud in the inducement is cognizable under section 301, to contest the formation of an agreement, Local 12 contends that it necessarily follows that any fraud in the inducement is *only* cognizable under section 301. Local 12 maintains that a decision permitting the Wilsons to bring an action under state law, runs the risk of inconsistent adjudication and therefore conflicts with the uniformity rationale behind section 301 preemption.

While we agree that our holding that a plaintiff's tort action for fraud in the inducement may involve interpreting the same set of facts as a section 301 action,

we find this to be entirely consistent with the Supreme Court's preemption decision in *Lingle*. As the Court stated in that opinion,

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Lingle*, 486 U.S. at 409–10, 108 S.Ct. at 1883 (footnote omitted).

While we agree with Local 12 that section 301 preemption is broadly defined, "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Lingle*, 486 U.S. at 411, 108 S.Ct. at 1884. We hold that the Wilsons' state tort claim for fraud in the inducement is not preempted by section 301 because it does not require reference to the collective bargaining agreement.

### 2. *Garmon Preemption*

Local 12 next claims that the district court lacked jurisdiction to hear the Wilsons' action for fraud in the inducement because the action was preempted by the doctrine announced by the Supreme Court in *Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80. We disagree.

The *Garmon* doctrine provides that when an "activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Id.* at 245. In *International Longshoremans Ass'n v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), the Court explained the standard to be applied in deciding whether an action is

---

**3.** The Supreme Court's recent decision in *United Steelworkers of America v. Rawson*, —— U.S. ——, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) does not alter the application of *Lingle* to this case. In *Rawson*, a determination of the union's tort liability required reference to the collective bargaining agreement to determine the existence and scope of the union's duty. *Id.* 109 S.Ct. at 1910–11. Here, in contrast, reference to the agreement is not necessary to determine the union's tort liability.

within the primary jurisdiction of the NLRB: "[i]f the word 'arguably' is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the [NLRB] could legally decide in his favor." *Id.* at 395, 106 S.Ct. at 1914.

■ Local 12 presents two reasons why the Wilsons' action for fraud in the inducement should be preempted under the *Garmon* doctrine. First, Local 12 attempts to characterize the agreement Wilson signed at the jobsite as a pre-hire contract. Once the contract is so characterized, Local 12 relies on the NLRB's decision in *John Deklewa & Sons*, 282 NLRB No. 184 (1987), enf'd 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), adopted by this court in *Mesa Verde Constr. v. Northern Cal. Dist. Council of Laborers*, 861 F.2d 1124 (9th Cir.1988) (en banc), for the proposition that the Wilsons' action may arguably be brought as an unfair labor practice. *Deklewa* held that a pre-hire contract may not be repudiated by an employer.[4] Local 12 alleges that an employer's inability to repudiate a pre-hire contract means that relief from enforcement of the pre-hire contract may arguably be brought as an unfair labor practice.

We need go no further in rejecting this claim than to note that the agreement signed by Wilson was not a pre-hire contract. The agreement was clearly entitled "Owner–Operator Short Form Collective Bargaining Agreement." The agreement ostensibly permitted Wilson to operate his own equipment as a member of Local 12. Its plain language does not support a characterization as a pre-hire contract. Finally, the agreement was presented to the jury as

4. On remand, and on petition for rehearing and rehearing *en banc*, we determined that this rule would not be applied retroactively. *Mesa Verde Const. v. Northern Cal. Dist. of Laborers*, 895 F.2d 516 (9th Cir.1989).

5. Local 12 cites this court to three cases outside our circuit which held that the fraudulent inducement of a collective bargaining agreement is arguably an unfair labor practice. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1515–18 (11th Cir.1988), *cert. denied*, — U.S. —, 109

an owner-operator agreement, not as a pre-hire contract.

■ Local 12 next claims that Kinsey's assertion that Wilson had to sign the agreement was arguably an unfair labor practice, because it was a misrepresentation during contract negotiations in violation of section 8(b)(3) of the LMRA. 29 U.S.C. § 158(b)(3). We disagree. The facts here fail to reveal that Wilson and Kinsey were "bargaining" prior to Wilson signing the agreement on the hood of Kinsey's car.

A union cannot compel an employer to bargain for employees the union does not represent. *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1377 (9th Cir.1984). Here, Local 12 did not represent a majority of the Wilsons' employees; nor, as noted above, is there support for a finding that the agreement was a pre-hire contract permitting Local 12 to bargain for the employees in the absence of majority support. LMRA, §§ 8(f), 9(a). In the absence of a recognized bargaining relationship, Kinsey's misrepresentation to Wilson at the jobsite is not arguably a violation of section 8(b)(3).[5]

We therefore find that the Wilsons' claim for fraud in the inducement was not within the primary jurisdiction of the NLRB and was not preempted.

## III. CONCLUSION

The judgment against the Trusts was not appealed. The action against Local 12 for fraudulent inducement to sign the forms was not preempted by the NLRA and is therefore affirmed.

**AFFIRMED.**

S.Ct. 2066, 104 L.Ed.2d 631 (1989); *Kolentus v. Avco Corp.*, 798 F.2d 949, 960–62 (7th Cir.1986), *cert. denied* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987); *Serrano v. Jones and Laughlin Steel Co.*, 790 F.2d 1279, 1283–88 (6th Cir. 1986). We do not disagree with these cases. In fact, we have similarly found that a misrepresentation at the bargaining table was an unfair labor practice. *See Rozay's*, 850 F.2d at 1325–26. However, in all these cases the parties had a recognized bargaining relationship. Not so here.

CANBY, Circuit Judge, dissenting:

Judge Hug has produced a well-crafted opinion in a difficult area of law, but I find myself compelled to dissent from it. I do so because I believe that the Wilsons' state-law claim for fraud in the inducement of a collective bargaining agreement is preempted by section 301 of the LMRA, 29 U.S.C. § 185(a).

As the majority opinion recognizes, a claim for fraud in the inducement of a collective bargaining agreement *may* be brought under section 301. *Rozay's Transfer v. Local Freight Drivers, Local 208,* 850 F.2d 1321, 1326 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). The majority holds, however, that a state-law claim is not preempted simply because a section 301 claim could be brought on the same set of facts. The authority for this proposition is *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

It is true that, under *Lingle,* a state-law claim is not preempted simply because a section 301 claim could be brought that would address "precisely the same set of facts...." *Id.* at 410, 108 S.Ct. at 1883. But the state-law claim, to avoid being preempted, must be able to "be resolved without interpreting the [collective bargaining] agreement itself...." *Id.* In my view, the Wilsons' claim does not pass this test.

The viability of the Wilsons' fraud claim, as it was submitted to the jury, depended upon the Wilsons' having sustained damages as a result of the defendants' conduct "in any one or more of the following categories: lost time defending trusts claims, emotional distress, indemnity for trusts claims, or attorneys' fees in defense of trust claim[s]." Special Jury Interrogatory No. 8, quoted in the majority opinion, p. 537. All four of these categories depends upon the *invalidity* of the collective bargaining agreement that Carroll Wilson signed. Certainly if he had entered a *valid* collective bargaining agreement, the Wilsons would have suffered no legally cognizable damages relating to the trusts' claims and their defense, because the claims would have been perfectly legitimate. Even the damages for emotional distress, under the facts of this case, depend upon the invalidity of the collective bargaining agreement. This is not a case where, for example, a union agent placed a gun to the head of an employer and forced him to sign an agreement. In that situation, the assault itself causes emotional distress. On the present record, I do not see any evidence that the Wilsons were caused emotional distress because "Hoss" Kinsey told Carroll Wilson he had to sign the agreement in order to be permitted to remove dirt from the work site. The distress, as I understand it, followed from the claims and entanglements arising from the agreement itself—the claims by the trusts, the necessity of defending them, and the threat of financial liability. If the agreement was valid, that distress is not compensable.

When a state claim cannot succeed unless the state court determines that a collective bargaining agreement is invalid, that state claim is not "independent" of the collective bargaining agreement within the meaning of *Lingle. Lingle* establishes that a state claim is not independent when it requires construction of the collective bargaining agreement. *Id.* at 407, 108 S.Ct. at 1882. To hold that a collective bargaining agreement means nothing—that it is invalid—is the most radical form of construction. Our cases implicitly acknowledge that fact when they hold that a district court has the power, in a suit under section 301, to determine the validity of a labor contract that is under attack on grounds of fraud. *See Rozay's Transfer,* 850 F.2d at 1326; *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501, 1503–05 (9th Cir.1984). The Supreme Court operated on the same assumption when it held that state-law claims based on individual employment contracts were not preempted because "[s]ection 301 says nothing about the content *or validity* of individual employment contracts." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (emphasis added).

*Lingle* involved a state claim for retaliatory discharge of a worker for filing a worker's compensation claim. The worker could have sued under section 301 for discharge in violation of an applicable collective bargaining agreement. That fact was not enough to cause preemption of the state-law claim because the state law claim in no way depended on the collective bargaining agreement; indeed, the agreement was irrelevant to it. *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882. Here, however, the entire claim requires an adjudication that the collective bargaining agreement is invalid. That is a question of federal law, *Rozay's Transfer,* 850 F.2d at 1326, and falls, I submit, within the category of contract interpretation. When the state creates a right that is applicable only under a particular construction of a collective bargaining agreement, it is preempted. *Lingle,* 486 U.S. at 408 n. 7, 108 S.Ct. at 1882 n. 7.

Whether a collective bargaining agreement is valid, and what types of conduct may vitiate an otherwise valid agreement, are matters that ought to be governed by uniform federal law. *See Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute"). That principle is inherent in the concept of the federal common law of collective bargaining agreements that was launched in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). In prior cases we have wrestled with the question whether a court that is asked to determine the validity of a collective bargaining agreement under section 301 must yield to the primary jurisdiction of the National Labor Relations Board, *see, e.g., Rozay's Transfer,* 850 F.2d at 1326 (court may decide validity under § 301); *International Brotherhood of Electrical Workers, Local 532, v. Brink Construction Co.,* 825 F.2d 207, 212 (9th Cir.1987) (same), but we have never entertained the notion that it would be proper for such a question to be decided as a matter of *state* law. Yet that is what has happened in this case, because the entire state-law claim depends upon an implicit threshold determination that the collective bargaining agreement signed by Carroll Wilson was invalid. Believing that such a determination may only be made as a matter of federal law, I would reverse the decision of the district court and would hold that the Wilsons' state-law claim is preempted by section 301.