50 F.3d 770
 148 L.R.R.M. (BNA) 2841, 129 Lab.Cas. P 11,299,
10 IER Cases 801
 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS, GENERAL TRUCK DRIVERS,
OFFICE, FOOD & WAREHOUSE LOCAL 952,
Plaintiff-Appellant,
v.
AMERICAN DELIVERY SERVICE CO., INC.; Montgomery Ward & Co.,
Inc., Defendants-Appellees.
 No. 93-55978.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1994.
Decided March 23, 1995.
 
 Robert D. Vogel, John A. Siqueiros, Wohlner Kaplon Phillips Young & Barsh, Encino, CA, for plaintiff-appellant.
 Glenda E. Martinez, Timothy F. Ryan, Morrison & Foerster, Los Angeles, CA, for defendant-appellee American Delivery Service Co.; Peter D. Holbrook, McDermott, Will & Emery, Newport Beach, CA, for defendant-appellee Montgomery Ward & Co., Inc.
 Appeal from the United States District Court for the Central District of California.
 Before: BROWNING, GOODWIN, and FERGUSON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 General Truck Drivers, Office, Food and Warehouse Local 952, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("the Union") filed this action against American Delivery Service Company, Inc. ("ADS"), and ADS's parent, Montgomery Ward & Company, Inc. ("Ward"), under Section 301(a) of the Labor Management Relations Act of 1947 ("Section 301(a)"), 29 U.S.C. Sec. 185, and the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. Sec. 2101 et seq.
 
 
 2
 Ward operates a merchandise warehouse in Garden Grove, California, known as the Big Ticket Distribution Center ("BTDC"). ADS, a wholly-owned subsidiary of Ward, formerly provided Ward with customer delivery service from the BTDC. Ward's contract with ADS gave Ward the right to terminate this arrangement, either upon thirty days' written notice, or immediately in the event of a work stoppage. ADS had a work stoppage, and Ward exercised its right. The Union represents individuals who formerly worked for ADS at the BTDC, but lost their jobs when Ward cancelled its delivery arrangement with ADS.
 
 
 3
 The Union brings claims against ADS and Ward under Section 301(a) and WARN. According to the Union, its members were fraudulently or negligently induced into ratifying the terms of the new collective bargaining agreement ("CBA") by false assurances that Ward would not cancel its contract with ADS. Under Section 301(a), the Union seeks to recover the wages and benefits that it lost by relying on this misrepresentation. Under WARN, the Union seeks sixty days' salary and benefits as damages for the "employment loss" ADS drivers suffered on March 30, 1991, when Ward's cancellation of its carrier contract suddenly ended ADS's Garden Grove delivery business.[1]
 
 
 4
 The District Court granted summary judgment to Ward on all claims, holding that ADS and Ward are not a "single employer" under either Section 301(a) or WARN, and therefore that Ward is not responsible to ADS's employees. The District Court granted summary judgment to ADS on the WARN claim, holding that "unforeseen business circumstances" relieved ADS of its duty to give sixty days' advance warning before terminating its employees. The District Court denied summary judgment to ADS on the Section 301(a) claim.
 
 
 5
 We affirm the District Court's finding of jurisdiction over the Union's section 301(a) claims, but reverse the grant of summary judgment. Because the evidence, when viewed in the light most favorable to the Union, creates a genuine question whether ADS was under the actual or constructive control of Ward, the District Court should have permitted the Union to go forward with its Section 301(a) and WARN claims.
 
 Jurisdiction
 
 6
 We review de novo the District Court's jurisdictional finding that the Union's fraud and misrepresentation claims are within Section 301(a) and not within the primary jurisdiction of the NLRB. See Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1406 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993).
 
 
 7
 Ward contends that the District Court lacked jurisdiction under Section 301(a) to entertain the Union's claim that it was induced to ratify the CBA by fraud or negligent misrepresentation. See 29 U.S.C. Sec. 185. Because a state law claim that does not require interpretation of a CBA is not preempted by federal law under Section 301(a), Ward argues that a federal law claim that does not require interpretation of a CBA cannot be brought under Section 301(a). That is not correct.
 
 
 8
 Section 301(a) encompasses not only a claim that a CBA has been breached--a claim that would require "interpretation" of the terms of the CBA--but also a claim that a CBA is invalid on the basis of fraud in the inducement--a claim that would not, strictly speaking, require "interpretation" of the terms of the CBA. See Operating Engineers Pension Trust v. Wilson, 915 F.2d 535, 538-39 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992) (Holding that claim for fraudulent inducement to ratify CBA did not require interpretation of the collective bargaining agreement).
 
 
 9
 Ward's argument requires us to examine the tricky relationship between the doctrines of Section 301(a) preemption and Garmon preemption. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
 
 I.
 
 10
 In Garmon, the Supreme Court articulated the general rule regarding the scope of the NLRB's primary jurisdiction:
 
 
 11
 When an activity is arguably subject to Sec. 7 or Sec. 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board....
 
 
 12
 Id. at 245, 79 S.Ct. at 779. Fraudulently inducing a union to enter into a CBA is "arguably" an unfair labor practice subject to the primary jurisdiction of the NLRB. Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321, 1325-26 (9th Cir.1988), cert. denied, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989).
 
 
 13
 Not all unfair labor practices are swept into the NLRB under Garmon, however. Claims brought under Section 301(a) of the LMRA may be heard in federal court even if they allege conduct that is arguably an unfair labor practice. William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville and Vicinity, 417 U.S. 12, 15-18, 94 S.Ct. 2069, 2071-73, 40 L.Ed.2d 620 (1974); Smith v. Evening News Ass'n, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). Thus, if the Union's claim is within the scope of Section 301(a), the District Court had jurisdiction to hear it.
 
 
 14
 In Rozay's, an employer brought suit against Teamster's Local 208 alleging that it had been induced by Local 208's fraud to execute a CBA. The employer sought rescission and indemnification for its losses.[2] 850 F.2d at 1323. Its complaint alleged jurisdiction under Section 301(a) of the LMRA. We rejected the contention that the NLRB had exclusive jurisdiction over the dispute. Id. at 1326. We acknowledged that Local 208's conduct was arguably an unfair labor practice, but stated that Section 301(a) of the LMRA "carves out a broad exception to the NLRB's primary jurisdiction for claims arising out of collective bargaining agreements, whether or not such claims would also be an unfair labor practice...." Id. That exception, we explained, "applies not only to suits for breach of a collective bargaining agreement once it is duly formed"--suits requiring "interpretation"--"but also to suits impugning the existence and validity of a labor agreement...." Id. (citations omitted) (emphasis added). Fraud in the inducement is an issue that may be interposed as a traditional contract defense in an action for breach of a CBA, as well as raised directly in an action to invalidate a CBA. Accordingly, Rozay's held that Section 301(a) conferred federal jurisdiction over "this action alleging fraudulent inducement in the formation of the agreement." Id. See also Operating Engineers, 915 F.2d at 539 ("[A]n action for fraud in the inducement is cognizable under section 301...." ).
 
 
 15
 Therefore, the Union's claim for fraud in the inducement may be brought directly in federal court under Section 301(a), and is not swept by Garmon into the primary jurisdiction of the NLRB.
 
 II.
 
 16
 Ward stumbles over Milne, 960 F.2d 1401, and falls into the belief that a claim cannot be brought under Section 301(a) unless the claim requires interpretation of a CBA. Milne belongs to a line of cases that consider when a claim brought under state law is preempted by federal law under Section 301(a). Milne holds that "[t]o determine whether a state law claim is completely preempted under section 301(a), the relevant inquiry is whether resolution of the claim requires the interpretation of a collective bargaining agreement." Id. at 1408. Only if a claim requires interpretation of the CBA does Section 301(a) preempt state law. Because a claim of fraud in the inducement does not require interpretation of a CBA, it is not preempted by Section 301(a). Operating Engineers, 915 F.2d at 538-39.[3]
 
 
 17
 In this circuit, the test for state law preemption under Section 301(a) sweeps less broadly than the test for whether Section 301(a) provides an exception to the Garmon doctrine. As we have already seen, Section 301(a) provides an exception to the Garmon doctrine where fraud is asserted to set aside a CBA, even though resolution of the fraud claim is a factual inquiry that does not turn on the meaning of the CBA. Claims that invalidate CBAs, as well as claims that interpret them, fall under Section 301(a). See Rozay's, 850 F.2d at 1326. When the question is one of preemption of state law, however, only claims that interpret CBAs fall exclusively under Section 301(a). See Milne, 960 F.2d at 1408; Operating Engineers, 915 F.2d at 538-39.[4]
 
 
 18
 The District Court had jurisdiction to hear the Union's claims under Section 301(a).
 
 Single Employer
 
 19
 The Union contends that ADS and Ward are a "single employer" for purposes of Section 301(a) and WARN. The District Court disagreed. Applying the four factors set forth by the Supreme Court to determine whether two nominally separate businesses constitute a "single employer" under the LMRA, and the five factors set forth in the WARN regulations to answer the same question, the District Court concluded that ADS and Ward are separate employers. We review the District Court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 20
 Because there is substantial overlap between the "single employer" tests under the LMRA and WARN, it is possible to discuss them together.
 
 I.
 
 21
 To determine "single employer" status under the LMRA, we consider these four factors: (1) common ownership; (2) common management; (3) centralized control of labor relations; and (4) interrelation of operations. Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965); A. Dariano & Sons, Inc. v. Dist. Council of Painters No. 33, 869 F.2d 514, 518 (9th Cir.1989).
 
 
 22
 Common ownership is the least important factor, See NLRB v. Carson Cable TV, 795 F.2d 879, 881 (9th Cir.1986), and the remaining three factors are guideposts only. "Single employer status ultimately depends on all the circumstances of the case and is characterized as an absence of an arm's length relationship found among unintegrated companies." NLRB v. Big Bear Supermarkets No. 3, 640 F.2d 924, 928 (9th Cir.1980), cert. denied, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980) (internal quotations omitted). A subsidiary should be considered a separate entity so long as it is not under the "actual or constructive control" of its parent. See A. Dariano & Sons, 869 F.2d at 519.
 
 II.
 
 23
 The relevant regulations under WARN provide that
 
 
 24
 Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending on the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.
 
 
 25
 20 C.F.R. Sec. 639.3(a)(2). The Department of Labor ("DOL") has explained that "[t]he intent of the regulatory provision relating to independent contractors and subsidiaries is not to create a special definition of these terms for WARN purposes...." 54 Fed.Reg. 16,045 (1989).
 
 
 26
 [T]he definition is intended only to summarize existing law that has developed under State Corporations laws and such statutes as the NLRA, the Fair Labor Standards Act (FLSA) and the Employee Retirement Income Security Act (ERISA). The Department does not believe that there is any reason to attempt to create new law in this area especially for WARN purposes when relevant concepts of State and federal law adequately cover the issue.... Similarly, the regulation is not intended to foreclose any application of existing law or to identify the source of legal authority for making determinations of whether related entities are separate....
 
 
 27
 Id.
 
 
 28
 The Union reads this comment to require courts to analyze "single employer" WARN claims under the five factors enumerated in 20 C.F.R. Sec. 639.3(a)(2) and under the LMRA and under ERISA and under the FLSA and under state corporate veil-piercing doctrines. Although a few District Courts seem to have taken this somewhat lapidary approach,[5] it seems unduly complicated to check off five different tests under five different headings when each test overlaps considerably and the basic point of the inquiry is clear: has Ward structured its relationship with ADS in such a fashion as to control ADS and, at the same time, avoid Ward's obligations under federal law? It is also unnecessary to do so, in view of the DOL's comment that WARN's regulation "is not intended ... to identify the source of legal authority for making determinations of whether related entities are separate...." 54 Fed.Reg. at 16,045 (1989).
 
 
 29
 The Union also argues that the District Court erred in applying the LMRA and the WARN factors concurrently because "it is easier to find a single business enterprise for purposes of WARN than it is to demonstrate the entities constitute a single or joint employer for purposes of Section 301 of the LMRA." (Appellant's Opening Brief at 28.) If the Union means that, where an LMRA and WARN factor overlaps, the lowest quantum of evidence needed to satisfy either statute will satisfy WARN--perhaps because WARN is more "remedial" than the LMRA--the Union provides no authority for thinking so.
 
 
 30
 In reviewing the District Court's grant of summary judgment, we therefore apply the "single employer" factors under WARN and the LMRA concurrently.
 
 III.
 
 31
 Summary judgment may be granted only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable inferences drawn from the facts must be drawn in the nonmoving party's favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 32
 Without getting bogged down on the details, we conclude that the summary judgment must be reversed. On the issue of "single employer" status, the Union presented evidence that ADS did not adhere to corporate formalities, did not act independently through its Board of Directors, and did not make policy labor decisions without Ward's influence. How well the Union's evidence matches up against the contrary evidence presented by Ward and ADS we cannot say, for we cannot weigh evidence on this record; but we conclude the Union's evidence was sufficient to raise the genuine question whether Ward and ADS truly were "separate employers" dealing with each other at arm's length.
 
 Unforeseen Business Circumstance
 
 33
 WARN requires an employer who orders a plant closing or mass layoff to provide sixty days' notice to the affected employees. See 29 U.S.C. Sec. 2102. A statutory exception permits an employer to give fewer than sixty days' notice if the plant closing is caused by business circumstances that were not reasonably foreseeable as of the time that notice otherwise would have been required. See 29 U.S.C. Sec. 2102(b)(2)(A). The regulations to WARN explain that
 
 
 34
 [a]n important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. A principal client's sudden and unexpected termination of a major contract with the employer ... [might] be considered a business circumstance that is not reasonably foreseeable.
 
 
 35
 20 C.F.R. Sec. 639.9(b)(1) (1994) (emphasis added). In both Santa Fe Terminal Services, 826 F.Supp. at 332 and Jones v. Kayser-Roth Hosiery, Inc., 748 F.Supp. 1276, 1285-87 (E.D.Tenn.1990), the employer's loss of a major contract constituted an unforeseen business circumstance.
 
 I.
 
 36
 The Union argues that, as a matter of law, WARN's unforeseeable business circumstance exception may not excuse noncompliance with WARN so long as ADS could have, but did not, negotiate a provision in its customer contract requiring Ward to provide sixty days' notice before cancellation. According to the Union, the correct approach was taken by the Second Circuit in Local 217 v. MHM, Inc., 976 F.2d 805 (2d Cir.1992). In MHM, Inc., the defendant, a hotel management company, was sued by former employees who lost their jobs when the owner of the hotel shut the hotel down. The defendant argued that it was powerless to comply with WARN's notice provisions because it could not control the timing of the hotel owner's decision. The Second Circuit reasoned that nothing prevented the hotel management company from charging the hotel owner a fee that took into account potential WARN liability, or, alternately, from contracting ex ante with the hotel for sufficient notice of closure to allow it to comply with WARN. Id. at 808.
 
 
 37
 We decline to follow the Second Circuit on this issue. First, the dicta[6] to which the Union points does not discuss WARN's unforeseen business circumstance exception. The Second Circuit wrote: "Even if WARN contained an 'Act of God' or 'force majeure' exemption, the circumstances here would not trigger it." Id. at 808. But there is no need to cheerfully speculate about how an "Act of God" or "force majeure" exception might apply under WARN when one can simply apply an analogous statutory exception that does.[7] The fact that MHM, Inc. does not even mention the statutory exception makes its authoritativeness questionable. Cf. Sante Fe Terminal Services, 826 F.Supp. at 333 ("It is noteworthy that in MHM the court failed to address the explicit statutory business circumstance exception.").
 
 
 38
 Second, and more obviously, we decline to follow MHM, Inc. because "it renders the unforeseeable business circumstance exception virtually ineffective." Id. MHM, Inc. would have an employer always structure its business dealings to anticipate WARN liability. A requirement that employers create WARN insurance funds to cover circumstances where sixty days' notice could not practicably have been given would turn WARN into a strict liability scheme and the unforeseen business exception into a nullity.
 
 II.
 
 39
 With that said, we nevertheless conclude that the grant of summary judgment to ADS on the issue of unforeseen business circumstances must also be reversed. The grant of summary judgment on this issue was dependent upon the District Court's previous conclusion that ADS and Ward were separate entities and not "single employers." (Presumably, one integrated business entity cannot suddenly lose a major contract with itself.)[8] Because we reverse as premature the summary judgment that ADS and Ward are separate employers, we also reverse the summary judgment that unforeseen business circumstances excused ADS from WARN liability.
 
 Conclusion
 
 40
 The District Court's finding of jurisdiction over the Union's Section 301(a) claim is AFFIRMED. The District Court's grant of summary judgment to Ward and ADS is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 WARN requires that an employer give sixty days' advance warning before any "plant closing." See 29 U.S.C. Sec. 2102. A "plant closing" is a shutdown of a single site of employment that causes an "employment loss" for fifty or more full-time employees during a thirty-day period. 29 U.S.C. Sec. 2101(a)(2)
 
 
 [2]
 Rozay's is not limited, as Ward suggests, to actions seeking rescission only and not damages
 
 
 [3]
 Operating Engineers is closer to this case than Milne, because the fraud alleged in Milne did not arise during collective bargaining. See Milne, 960 F.2d at 1405
 
 
 [4]
 Here's how things stand now:
 a) If a claim requires interpretation of a CBA, state law is preempted by Section 301(a). Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988).
 If a claim does not require interpretation of a CBA, state law is not preempted by 301(a). An attack on the validity of a CBA therefore may be maintained under either federal or state law. Operating Engineers, 915 F.2d at 538-39.
 b) If the attack on the validity of the CBA is brought under Section 301(a), it may be heard before the federal courts, rather than the NLRB. Rozay's, 850 F.2d at 1326. Even if the claim "arguably" challenges an unfair labor practice, it may be brought in federal court, rather than before the NLRB, because Section 301(a) is an exception to Garmon preemption. William E. Arnold Co., 417 U.S. at 15-18, 94 S.Ct. at 2071-73.
 If, however, the attack on the validity on the CBA is brought under state law, and if the attack "arguably" challenges an unfair labor practice, it is preempted under Garmon (subject to two exceptions not relevant here) and must be brought before the NLRB (which, of course, will apply federal law). See Serrano v. Jones & Laughlin Steel Co., 790 F.2d 1279, 1286-88 (6th Cir.1986).
 
 
 [5]
 See Local 397 v. Midwest Fasteners, Inc., 779 F.Supp. 788, 791-92 (D.N.J.1992); Wholesale and Retail Food Distribution Local 63 v. Santa Fe Terminal Services, Inc., 826 F.Supp. 326, 334 (C.D.Cal.1993); United Mine Workers of America, Dist. 2 v. Florence Mining Co., 855 F.Supp. 1466, 1479-80 (W.D.Pa.1994)
 
 
 [6]
 The employee-plaintiffs in MHM, Inc. sought as their sole relief a preliminary injunction compelling the hotel management company to provide fifty-seven days of insurance coverage under WARN. The Second Circuit concluded that WARN does not provide for that equitable remedy. Id. at 808-09. Its discussion regarding an employer's duty to structure its business dealings ex ante to anticipate WARN liability therefore was not essential to its holding
 
 
 [7]
 Cf. Jurcev v. Central Community Hospital, 7 F.3d 618 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). A support foundation established for a hospital's benefit ceased funding the hospital. As a consequence, the hospital closed. The plaintiffs, former hospital employees, sued the hospital under WARN. In its defense, the hospital argued that it was excused from giving WARN notice because the cessation of funding was "not reasonably foreseeable." Id. at 625. The Seventh Circuit agreed. Applying 29 U.S.C. Sec. 2101(b)(2)(A), the Seventh Circuit held that the hospital had no control over the foundation's funding decisions, and that the cessation of funding was "sudden, dramatic, and unexpected," excusing the hospital from complying with WARN's notice requirement. Id. at 627
 
 
 [8]
 Even if Ward and ADS are regarded as one integrated business entity, their argument remains that the Union's March 30, 1991 strike constituted an unforeseen business circumstance. The Department of Labor has commented that it "agrees that it is generally the case that strikes will not be foreseeable" and that the "unforeseeable business circumstances exception equally may apply to the plant at which the strike is occurring." 54 Fed.Reg. at 16,058 (1989). However, the District Court found that the Union had put forth evidence that Ward and ADS were advised of the possibility of a strike, so this alternative theory cannot support the grant of summary judgment