CHAUFFEURS, SALES DRIVERS, WAREHOUSEMEN & HELPERS UNION LOCAL 572, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, Plaintiff–Appellant,

v.

WESLOCK CORPORATION; Westinghouse Electric Corporation, Defendants–Appellees.

No. 94–55613.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1995.

Decided Sept. 20, 1995.

John A. Siqueiros and Ralph M. Phillips, Wohlner, Kaplon, Phillips, Young & Barsh, Encino, CA, for plaintiff-appellant.

Jeffrey A. Kent, Poindexter & Doutre, Los Angeles, CA, for defendants-appellees.

Before: THOMPSON, LEAVY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Chauffeurs, Sales Drivers, Warehousemen and Helpers Union Local 572, International Brotherhood of Teamsters, AFL–CIO ("Union") appeals the district court's grant of summary judgment in favor of Westinghouse Electric Corporation ("Westinghouse") in the Union's action claiming violations of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101–2109, for Westinghouse's alleged failure to provide 60 days notice of a plant closing to employees at a Weslock Corporation ("Weslock") manufacturing facility. The Union specifically claims there are disputed issues of material fact as to whether the surrender in June of 1993 of Weslock assets to Westinghouse in satisfaction of a delinquent loan made Westinghouse an "employer" within the meaning of WARN prior to the closure of the Weslock manufacturing plant. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Under a financing and security agreement executed December 29, 1989, Westinghouse, acting as a lender, agreed to lend working capital to Weslock, American Builders Hardware Corporation ("ABHC"), and Modern Acquisition Corporation ("Modern Faucet") (collectively "the borrowers"), in an amount determined by a formula based on the value of the borrowers' accounts receivables and inventory. The loan was secured by the borrowers' manufacturing plants.

The borrowers defaulted on the loan in April of 1993. Instead of taking immediate possession of the collateral securing the loan, Westinghouse attempted to negotiate a mutually acceptable resolution to the borrowers' default. Specifically, Westinghouse indicated it was willing to accept satisfaction of the loan obligation at a discount to the loan's face value. Negotiations continued through the end of May, 1993. During this time period, and pursuant to the financing agreement, Westinghouse continued to make funds available to the borrowers on a day to day basis.

Finally, on either the 3rd or 4th of June, Christopher G. Kuran,[1] acting on behalf of the borrowers, and Donald R. Rooney, Jr.,[2] acting on behalf of Westinghouse, executed a cooperation and mutual release agreement which released the borrowers' shareholders from any personal liability associated with the default, and provided for the surrender of all the borrowers' secured assets to Westinghouse. At the same time, Mr. Kuran also signed three letter agreements wherein each debtor corporation agreed to surrender its assets to Westinghouse. With respect to ABHC and Modern Faucet, the letter agreements were left undated. The letter agreement concerning Weslock was dated June 1, 1993, but the parties do not dispute that they also intended to leave that agreement undated.

---

1. Mr. Kuran apparently acted as a general manager for all three corporations.

2. Mr. Rooney acted as vice president and managing director for Westinghouse.

Pursuant to the agreements, Westinghouse took physical possession of the ABHC assets "on about" June 3, 1993, and possession of the Modern Faucet assets on June 8, 1993. The parties disagree on the date Westinghouse assumed control of the Weslock assets.

On June 9, 1993, Mr. Rooney called Mr. Kuran and advised him that Westinghouse would not be advancing funds to pay the Weslock plant's employees beyond that date. Mr. Rooney also notified the Union's president, James L. Gaultiere, that "[t]he operations will be shut down at Weslock this afternoon." On the afternoon of the 9th, Mr. Kuran terminated the employment of all the Weslock plant's employees.

On June 10th, Westinghouse entered into an agreement with Transworld Services Group ("Transworld"), requiring Transworld to provide employees to staff the Weslock plant. Transworld subsequently hired most of the former Weslock employees.

The previously undated ABHC and Modern Faucet letter agreements were dated June 10 by Mr. Rooney. Mr. Rooney also changed the June 1 date on the Weslock agreement to June 10.

The Union filed the present action against Weslock and Westinghouse alleging a violation of section 3, 29 U.S.C. § 2102, of the WARN statute, which requires an "employer" to provide its employees 60 days written notice in advance of a plant closing or mass layoff. The parties stipulated to the dismissal of Weslock, leaving Westinghouse as the lone defendant. Westinghouse moved for summary judgment, and the district court granted the motion without explanation. The Union timely appeals.

## DISCUSSION

### 1. *WARN Requirements*

■ With some exceptions, WARN forbids an employer of 100 or more employees to "order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). A "plant closing" is a shutdown of a single site of employment that causes an "employment loss" for fifty or more employees during a 30–day period. 29

U.S.C. § 2101(a)(2). A "mass layoff" is any other work force reduction that results in an "employment loss" for either (1) fifty to 499 full-time employees, if the number laid off equals 33 percent of the work force, or (2) 500 full-time employees. 29 U.S.C. § 2101(a)(3). "Thus, when fewer than fifty full-time employees suffer an 'employment loss,' WARN notice is not required." *International Alliance of Theatrical and Stage Employees and Moving Picture Mach. Operators, AFL–CIO v. Compact Video Serv., Inc.*, 50 F.3d 1464, 1466 (9th Cir.1995).

"Employment loss" is defined as

(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period[.]

29 U.S.C. § 2101(a)(6). We have previously accepted the Department of Labor's (DOL) explanation that the word "'termination' is 'to have its common sense meaning' as 'the permanent cessation of the employment relationship.'" *Compact Video*, 50 F.3d at 1466 (internal brackets omitted) (quoting 54 Fed. Reg. 16,047 (1989)).

An employer who violates the WARN notice provision is liable to each aggrieved employee who suffers an employment loss for "back pay for each day of violation," 29 U.S.C. § 2104(a)(1)(A), "up to a maximum of 60 days," 29 U.S.C. § 2104(a)(1). But before the penalty provided by the Act applies, the plaintiff must demonstrate that the defendant is an "employer" responsible for the employment loss. *See* 29 U.S.C. § 2102(a). This requirement is at the heart of the parties dispute.

Westinghouse argues that it was only a lender, not an employer, when the Weslock plant employees were terminated on June 9. On the other hand, the Union asserts that the evidence submitted at summary judgment raises a triable issue of fact whether Westinghouse took possession *and* control of the business operations of the Weslock plant prior to June 9. Before addressing the factual component of the Union's argument, we must determine whether, as a matter of law,

a secured creditor can be an "employer" under WARN.

### 2. *Can a Secured Creditor be a WARN Employer?*

█ For purposes of WARN "the term 'employer' means any business enterprise that employs ... 100 or more employees." 29 U.S.C. § 2101(a). The simplicity of the definition emphasizes its apparent breath. The plain language of the statute easily embraces *any* defendant who engages in a "business enterprise." In this regard, we think the crucial question is not the status of the defendant's legal relationship to the business but, instead, if at the time of the plant closing or mass layoff the defendant is responsible for operating the business as a going concern.

█ Our interpretation of the statute's scope is supported by the commentary appended to the DOL's final regulations. Although the regulations do not directly address a situation where a secured creditor takes possession of a debtor's business assets, the comments acknowledge that the application of WARN to a "fiduciary" (i.e., a trustee) in a bankruptcy proceeding is dependent on whether the fiduciary has in fact operated the debtor's assets as a business enterprise:

> DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed.Reg. 16,045 (1989). For the purpose of determining when a defendant becomes an employer under WARN, we see no reason for drawing a distinction between a "fiduciary" in bankruptcy who takes control of a debtor's assets and a creditor who exercises control over collateral securing a delinquent loan. Accordingly, we rely on the statute's

definition and the agency's commentary to conclude that WARN's obligations indeed can apply to a secured creditor, but only where the creditor operates the debtor's asset as a "business enterprise" in the "normal commercial sense." *See id.* On the other hand, where the creditor does no more than exercise that degree of control over the debtor's collateral necessary to protect the security interest, and acts only to preserve the business asset for liquidation or sale, the notice requirement of WARN will not apply "precisely because the [defendant has not] continue[d] the business in operation." *See id.* We note that our holding is limited to the statutory scheme governing WARN; a determination that a defendant is an employer under WARN "creates no other employment rights." *See* 20 C.F.R. § 639.6; *see also* H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 1054 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 2087.

We next consider whether the evidence presented at summary judgment creates a genuine issue of material fact as to whether Westinghouse operated the Weslock facility as a business enterprise after the execution of the surrender agreements on the 3rd or 4th of June and before the plant's closure on June 9.

### 3. *Was Westinghouse a WARN Employer?*

█ The parties mainly rely on the sworn statements of Weslock general manager Christopher G. Kuran and Westinghouse vice president Donald R. Rooney, Jr. to advance their various positions. The Union maintains that Mr. Kuran's testimony supports a finding that Westinghouse controlled and operated the Weslock manufacturing facility prior to the June 9 termination of the plant's employees. We disagree.

As evidence of a Westinghouse takeover, the Union points to Mr. Kuran's statements regarding the role Mr. Rooney assumed at the Weslock facility after the agreements were signed on either the 3rd or 4th of June. Mr. Kuran asserts that prior to June 9, Mr. Rooney exercised "complete control" over the "day-to-day operations" of the Weslock facility, called "all the shots," and became the

"manager" at the plant. These conclusory characterizations, however, are not supported by the record. Indeed, there is no indication that Mr. Rooney was responsible during the six days in question for operating the Weslock facility as a business enterprise in the normal commercial sense: Mr. Rooney apparently did not participate in decisions concerning the plant's production output, the marketing of the plant's product, or the plant's employment practices. Without some evidence showing Mr. Rooney's involvement in the functional operations of the Weslock facility, there can be no finding that Westinghouse is an employer under WARN. *Cf. Long Beach Unified Sch. Dist. v. Godwin Cal. Living Trust,* 32 F.3d 1364, 1367 (9th Cir.1994) (before a defendant can be an operator of a hazardous waste facility under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") the defendant "must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management").

Unquestionably, the record demonstrates that Mr. Rooney maintained an on-going involvement in Weslock's financial problems. Between June 4 and June 9, Mr. Rooney often was responsible for approving or disapproving the additional advancement of Westinghouse funds to discharge Weslock's monetary obligations. But Mr. Rooney's relationship to the Weslock management was consistent with the type of control a secured creditor legitimately may exercise over a defaulting debtor to protect collateral securing a loan. *Cf. Hill v. East Asiatic Co. Ltd. (In re Bergsoe Metal Corp.),* 910 F.2d 668, 672–73 (9th Cir.1990) (secured creditor is not liable under CERCLA for the debtor's hazardous waste where the secured creditor's participation in the management of the debtor's business was financial only). WARN's notice

obligation simply does not apply to a secured creditor like Westinghouse whose interaction with the delinquent debtor primarily is limited to financial controls designed to preserve its security interest.[3]

CONCLUSION

After reviewing the evidence in the light most favorable to the Union, we are convinced there is no dispute of a genuine issue of material fact upon which any rational trier of fact could find that Westinghouse operated the Weslock facility as a business enterprise for the six days prior to the closure of the plant on June 9. The district court order granting summary judgment in favor of Westinghouse is therefore AFFIRMED.

---

**3.** The Union also contends that Westinghouse was a "joint employer." *See* 20 C.F.R. § 639.3(a)(2) (explaining that under existing legal rules, independent contractors and subsidiary corporations may be treated as part of the contracting company or parent corporation for the purpose of determining who is the WARN employer); *International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, Gen. Truck Drivers, Office, Food & Warehouse Local 952 v. American Delivery Serv. Co.,* 50 F.3d 770, 775–76 (9th

Cir.1995) (same). Assuming, without deciding, that a secured creditor could be a "joint employer," the Union's argument fails here for the same reason Westinghouse is not a "single" employer: the level of Westinghouse involvement in Weslock's business did not exceed the limits permitted a secured creditor who acts primarily to protect its security interest.