# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3112

_____

| | | |
|---|---|---|
| The Trustees of the Twin City Bricklayers Fringe Benefit Funds, | * | |
| | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Superior Waterproofing, Inc., a Minnesota Corporation; Raymond Paschke, | * | |
| | * | |
| | * | Appeal from the United States |
| | * | District Court for the District of |
| Defendants Third Party Plaintiffs - Appellants, | * | Minnesota. |
| | * | |
| | * | |
| v. | * | |
| | * | |
| Bricklayers and Allied Craftworkers Local Union No. 1 of Minnesota, | * | |
| | * | |
| | * | |
| Third Party Defendant - Appellee. | * | |
| | * | |

_____

Submitted: March 13, 2006
Filed: June 7, 2006

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Trustees of the Twin City Bricklayers Fringe Benefit Funds brought this action against Superior Waterproofing, Inc. and its sole owner Raymond Paschke (collectively Superior) for violation of a statewide collective bargaining agreement (and a related interim independent agreement) with the Bricklayers and Allied Craft Workers Union Local No. 1 of Minnesota (the Union). Subsequently Superior filed a third party complaint against the Union for fraudulent inducement. The Union moved to dismiss Superior's complaint, and the district court[1] granted the motion after concluding that the third party claims were preempted under § 301 of the Labor Management Relations Act. Superior appeals, and we affirm.

I.

Superior is a Minnesota corporation formed in 1980 by Paschke, its president and sole shareholder. It specializes in caulking and waterproofing, and a number of its craft employees are members of the Union. Since 1981 Superior has been a party to a statewide collective bargaining agreement (CBA) with the Union, along with many other independent employers and several large trade organizations. Paschke also signed a separate interim independent agreement in 2001 which made him personally liable for Superior's obligations under the CBA.

Under Article 23 of the CBA, Superior is required to contribute to a multiemployer fringe benefit plan, defined under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 (37). The plan to which Superior agreed to contribute under the CBA provides pension, health, welfare, and other benefits to covered employees, and it is administered by the Trustees. Article 23 of the CBA requires employers to make monthly fringe benefit contributions "for each hour worked by all Employees covered by this Agreement," to submit monthly fringe benefit contribution Reporting Forms, and to "furnish ... on demand, all necessary employment and payroll records relating to its Employees and persons performing

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

work covered by this Agreement ... that may be required in connection with the administration of the Trust Funds." It also contains the parties' acknowledgment that provisions "establishing rates of pay, wages ... and other terms and conditions of employment, including fringe benefits, apply to Employees employed in job classifications within the jurisdiction of the Union, regardless of whether or not such Employees are members of the Union." In addition, Article 27 of the CBA provides that "(t)his Agreement covers the entire understanding between the parties hereto."

In April 2004, the Trustees informed Superior that they intended to conduct a fringe benefit compliance audit and they demanded relevant employment, payroll, and fringe benefit contribution records pursuant to Article 23 of the CBA. In their first party complaint, the Trustees allege that their demand for records was prompted by Superior's breach of the CBA and interim independent agreement by its failure to submit the required monthly contribution Reporting Forms and the required contributions for many of its covered employees. The complaint also alleges that Superior has failed to cooperate with the compliance audit. Because of this failure the Trustees subsequently demanded payment of over $50,000 in delinquent fringe benefit contributions. When Superior refused, the Trustees brought this action to recover the delinquent contributions together with liquidated damages, reasonable attorney fees, and audit costs.

Superior asserts in its answer to the Trustees' complaint that it had an understanding that it did not have to make contributions and submit Reporting Forms for all of its eligible employees and that any such obligations were procured through fraud. In an affidavit Paschke claims that shortly after he formed Superior, he told the Union business manager George Heppelmann that he wanted to sign on to the statewide CBA to be eligible for union only jobs, but that he could not afford to make union fringe benefit contributions for all of his craft employees. Heppelmann allegedly told him that it would be sufficient to place "two or three" employees in the Union and make contributions only on their behalf. Paschke claims that this was consistent with his own past experience working as a tuckpointer and caulker for a

signatory to the statewide CBA who had not paid union wages or made fringe benefit contributions for him, allegedly with Heppelmann's approval. Paschke claims it was because of this experience that he agreed to sign on to the statewide CBA.

Superior has repeatedly renewed its participation in the CBA over the last twenty five years, but it contends that the Union has always known that contributions were being made for at most "about half" of its craft employees and that the Union assisted this arrangement by informing Paschke when particular jobs were union only so that he would know which employees could staff them. It asserts that it has established a separate fringe benefit plan for its non union employees to which it has contributed more than $25,000.

After the Trustees filed their first party complaint against Superior for breach of the CBA and the interim independent agreement, Superior filed a grievance with the Union. The grievance asked that the Union intercede on Superior's behalf and indemnify it for the delinquent contributions and other costs. The Union declined to process the grievance for the reason that disputes about fringe benefit payments are not covered by the grievance provisions of the CBA.

Superior then submitted an unfair labor practice charge to the National Labor Relations Board (NLRB), alleging that the Union had failed to engage in good faith negotiations in violation of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., by fraudulently inducing the company to enter into the CBA. Cf. NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 359 (1958) (Harlan, J., concurring in part) (obligation to bargain collectively includes duty to negotiate in good faith). By letter dated September 21, 2004, the NLRB regional director dismissed Superior's charge because the applicable CBA is a prehire agreement covered by § 8(f) of the NLRA, 29 U.S.C. § 158(f).[2] In contrast to that part of the

---

[2]A prehire agreement is different from an ordinary collective bargaining agreement in that the union signatory is permitted to represent company employees without having been elected or recognized by the NLRB to have majority support.

NLRA governing collective bargaining generally, see 29 U.S.C. § 158(d), section 8(f) contains no good faith negotiation requirement, and the Board has chosen not to imply one. See Sheet Metal Workers Local 9 (Concord Metal), 301 NLRB 140, 145 (1991). The regional director's dismissal of Superior's charge was upheld in a November 30, 2004 letter from the NLRB General Counsel whose decision was the Board's final determination.

Superior next sought leave from the district court to file a third party complaint, alleging that the Union had fraudulently and negligently misrepresented the nature of Superior's obligations under the CBA and fraudulently concealed relevant facts in violation of Minnesota law. The district court granted leave, and the third party complaint was filed in March 2005. In it Superior seeks rescission of the CBA and the interim independent agreement, indemnification and contribution for any delinquent fringe benefit contributions, and other damages and costs which it would be forced to pay the Trustees.

The Union moved to dismiss the third party complaint for failure to state a cause of action. It asserted that Superior's state tort claims were preempted under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. In § 301 Congress provided a federal cause of action for violation of contracts between employers and labor organizations, a remedy distinct from the grievance procedures established under the NLRA. The Union argued that Superior's state law claims could not be resolved without interpreting Article 23 of the CBA and were therefore preempted, citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988), and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985).[3] The district court agreed and

---

Such agreements are permitted under § 8(f) of the NLRA for the construction industry because of its unique characteristics. See Building & Construction Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 231 (1993).

[3]The Union thus asserts preemption as a defense, raising the question of whether Superior's claim can be litigated in this action. This form of preemption is distinct from the jurisdictional doctrine of complete preemption used to remove state

granted the motion to dismiss. Paschke's individual claims were included in the dismissal based on the court's determination that he was an employer within the meaning of the LMRA. See 29 U.S.C. § 152(2).

## II.

Superior appeals from the judgment of the district court dismissing its third party complaint.[4] We review the grant of a motion to dismiss de novo, using the same standard as the district court, and we accept the factual allegations in the third party complaint as true. MM&S Financial Inc., v. Nat'l Ass'n of Securities Dealers, Inc., 364 F.3d 908, 909 (8th Cir. 2004).

As a preliminary matter, Superior contends that Paschke's individual claims relating to the interim independent agreement cannot be preempted because he is not an employer within the meaning of the LMRA. The Union counters that Paschke fits the statutory definition of an employer. Since this is a question of statutory interpretation, the plain language of the Act controls if it is unambiguous. United States v. Mickelson, 433 F.3d 1050, 1052 (8th Cir. 2006). The LMRA defines an "employer" to include "any person acting as an agent of an employer, directly or indirectly." 29 U.S.C. § 152(2). There can be little doubt that this definition includes Paschke, who as Superior's sole shareholder and president acted on its behalf during all dealings with the Union relating to the CBA and the company's fringe benefit

claims to federal court. Caterpillar v. Williams, 482 U.S. 386, 392-93 (1987); see also Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1049 n.2 (8th Cir. 2006); Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996).

[4]When it became apparent at oral argument that judgment had not been entered in the third party action and that there had been no Fed. R. Civ. P. 54(b) certification, we issued a limited remand order for the district court to address whether an immediate appeal would serve the interests of justice. It then certified that there was "no just cause for delay."

obligations. The claims asserted by Paschke in his individual capacity are based on facts identical to those alleged by the company.

On its appeal Superior maintains that the district court erred in concluding that its third party action is preempted under § 301 of the LMRA because it does not allege any violation of the CBA or the interim independent agreement, citing Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW, 523 U.S. 653 (1998). It also contends that neither agreement need be interpreted to resolve the third party claims and that it was entitled to rely on the Union's assurances regardless of the contractual language, given its course of dealing with Heppelmann and the Union. The Union responds that the district court's conclusion regarding § 301 preemption was correct.[5] It asserts that Textron is inapposite and that the CBA must be construed and interpreted to resolve the third party claims since Superior has alleged that it relied on assurances which conflict with the language of Articles 23 and 27.

A.

Textron was a case with no preemption issue. The question there was whether the federal district court had subject matter jurisdiction under § 301 of the LMRA over a claim of fraudulent inducement when no party had alleged any violation of a collective bargaining agreement. Id. at 655-57. The Supreme Court ruled that there was no subject matter jurisdiction under § 301, requiring dismissal of the case. Id. at 661-62. This result was consistent with the congressional purpose in enacting § 301 to provide jurisdiction over "suits for violation of contracts," 29 U.S.C.§ 185, since no such violation had been alleged. Cf. Jacksonville Bulk Terminals, Inc. v. Int'l

---

[5]The Union argues in the alternative that Superior's claims are also preempted under the Garmon doctrine. Garmon preemption is unrelated to § 301 of the LMRA, for it arises under the NLRA. See Carlson, 445 F.3d at 1050 n.3. Under this doctrine, any state law claim arising from activity "arguably prohibited" by §§ 7 or 8 of the NLRA is preempted. Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 196 (1978); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244-47 (1959).

Longshoremen's Ass'n, 457 U.S. 702 (1982) (jurisdiction over suit for breach of "no strike" provision of CBA); Avco Corp. v. Machinists, 390 U.S. 557 (1968) (jurisdiction over suit to enjoin breach). Superior asserts that its third party complaint alleges no contractual violation, but as Textron acknowledged, once any party to an action asserts a contractual violation there is broad subject matter jurisdiction under § 301 to adjudicate related issues of contract validity such as fraud. 523 U.S. at 657-58. That is precisely the case here, where Superior's fraudulent inducement claims were raised in its answer to the Trustees' complaint which alleges that Superior breached Article 23 of the CBA. Textron does not bar the Union from asserting a preemption defense under § 301.

Congress enacted § 301 to provide federal jurisdiction over "suits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185, in order to fashion a body of federal common law for the purpose of resolving labor disputes in a uniform manner across the country. Lueck, 471 U.S. at 209. In recognition of this legislative goal the Supreme Court determined that any state law claim founded on rights created by a CBA is preempted under § 301, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102-03 (1962), as well as any claim whose resolution is substantially dependent upon or "inextricably intertwined" with interpretation of the terms of such an agreement. Lueck, 471 U.S. at 213, 220; see also Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1051 (8th Cir. 2006) (internal quotations omitted).

In its cases on § 301 preemption, the Supreme Court has distinguished those which require interpretation or construction of the CBA from those which only require reference to it. An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication. See Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994). In Lividas, for example, there was no § 301 preemption because a wage rate provision of the CBA only had to be referenced to compute the proper damages. Id. The Lueck case serves as a useful contrast. Although neither party in Lueck had alleged a violation of the CBA, the Supreme Court decided that an employee's common law fiduciary duty claim against his employer was preempted

under § 301 because the claim could not be resolved without interpreting the CBA for the employer's fiduciary duties turned on the extent of its contractual good faith obligations. Id. at 215-18. The Court reached a similar result in Int'l Broth. of Elec. Workers, AFL-CIO v. Hechler, 481 U.S. 851 (1987), and in United Steelworkers of America v. Rawson, 495 U.S. 362 (1998). In both of those cases, common law negligence claims asserted by employees against their unions were preempted under § 301, for their resolution depended upon whether the CBAs could be interpreted to have imposed a duty of care on the unions. Hechler, 481 U.S. at 859-60; Rawson, 495 U.S. at 369-72. These three Supreme Court decisions teach that state law claims will be preempted under § 301 if their resolution depends on interpretation of a CBA.

B.

The proper starting point for determining whether interpretation of a CBA is required in order to resolve a particular state law claim is an examination of the claim itself. See Smith v. Colgate-Palmolive Co., 943 F.2d 764, 768 (7th Cir. 1991). Here, Superior asserts claims under Minnesota law for fraudulent and negligent misrepresentation as well as fraudulent concealment. Minnesota requires that these claims be pled with particularity, Minn. R. Civ. P. 9.02, and that the material facts underlying each claim be specifically alleged. Parish v. Peoples, 9 N.W.2d 225, 227 (Minn. 1943). Fraudulent concealment may give rise to an independent cause of action if the plaintiff has been directly harmed as a result of the defendant's deliberate concealment of material facts. See In re TMJ Litigation, 113 F.3d 1484, 1497 (8th Cir. 1997). Superior has not alleged that the Union concealed any specific fact, but rather that the Union misrepresented the extent of Superior's contractual obligations or the likelihood that they would be enforced. We conclude that it has not adequately pled fraudulent concealment. See Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 529 (8th Cir. 1999) (alleged misrepresentation as to contractual value without actual concealment of financial information insufficient to plead fraudulent concealment under Minnesota law).

The main focus of Superior's argument on appeal deals with its claims for fraudulent and negligent misrepresentation. Under Minnesota law both require proof that the plaintiff justifiably relied on the defendant's misleading statements. Midland Nat'l Bank of Minneapolis v. Perranoski, 299 N.W.2d 404, 411 (Minn. 1990). (fraudulent misrepresentation); Bonhiver v. Graff, 248 N.W.2d 291, 298 (Minn. 1976) (negligent misrepresentation). Whether a plaintiff's reliance was justifiable is determined in light of the specific information and experience it had. Perranoski, 299 N.W.2d at 412. One can only justifiably rely on a statement which conflicts with the provisions of a written agreement it has signed if the agreement is "couched in ambiguous legal language which a layman could reasonably believe supported the representation." Id. (citing Weise v. Red Owl Stores, Inc., 175 N.W.2d 184, 187 (Minn. 1970)).

Superior suggests that we ought to except it from the rule regarding justifiable reliance because of the course of dealing it had with the Union. It argues that the long collective bargaining relationship between the parties created a level of trust justifying reliance regardless of the contract language, but this argument is not supported under the law. The rule in Minnesota is that express contractual language deserves greater weight than course of dealing. See Anoka-Hennepin Ed. Ass'n v. Anoka-Hennepin Indep. Sch. Dist. No. 1, 305 N.W.2d 326, 330 (Minn. 1981). Nothing about the collective bargaining process justifies diverging from this principle, since the process involves arms length negotiations and is inherently "confrontational and adversarial." See Donovan v. Tony and Susan Alamo Foundation, 722 F.2d 397, 403 (8th Cir. 1983). This is also not a case which might justify another exception, such as where a party had no opportunity to read the agreement, see Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1518 (10th Cir. 1983), for there has been no suggestion that Paschke was unfamiliar with the CBA and the related interim independent agreement before each was signed.

Whether Superior could justifiably rely on the Union's assurances about the extent of its fringe benefit obligations depends on the nature of the relevant provisions

of the CBA and whether they are sufficiently ambiguous to be susceptible to an interpretation which could lend support to its asserted belief that contributions were not necessary for all of its craft employees.  The district court concluded that to make such a determination, a fact finder would have to interpret the CBA and that the third party claims were therefore preempted under § 301.  See Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., No. 04-3009, 2005 WL 1490334, at *3 (D. Minn. 2005).  We agree.

C.

To determine whether Superior justifiably relied on the oral assurances allegedly made by the Union, the trier of fact would have to determine whether the contractual language in the CBA was ambiguous enough for a layman reasonably to believe that it was not contrary to the representations on which Superior claims it relied. Perranoski, 299 N.W.2d at 412.  This would require the trier of fact to examine the provisions in Article 23 requiring monthly fringe benefit contributions for every work hour by "*all Employees covered by this Agreement*" and submission on demand of all employment, payroll, and contribution records for all workers *"performing work covered by this Agreement*."  Moreover, those provisions would have to be considered together with the parties' acknowledgment that the fringe benefit provisions apply to employees in "*job classifications within the jurisdiction of the Union*" regardless of union membership and Article 27's declaration that the CBA covers "*the entire understanding*" between the parties.  Ambiguity might be found as to which employees or work would be covered by the CBA, for example.  Since Superior has the burden under Minnesota law to establish justifiable reliance, Perranoski, 299 N.W.2d at 411, it would have to show that all of the cited provisions could plausibly be read together to be consistent with its alleged understanding of its fringe benefit obligations.  Adjudication of the dispute and resolution of the third party claims will necessarily involve interpretation of the CBA.

-11-

We were confronted with a similar situation in Schuver v. MidAmerican Energy Co., 154 F.3d 795, 798-99 (8th Cir. 1998), where we held that the claims of an Iowa employee against his employer for fraud, promissary estoppel, and breach of fiduciary duty were preempted under § 301. Those claims were based on alleged oral promises about a voluntary retirement program. Id. at 797-98. We determined that the claims were preempted because in order to prove them the plaintiff would have had to show "that the terms of the (alleged) oral contract (were) not superceded or contradicted by the terms of the collective bargaining agreement," a showing that would require that the CBA be construed. Id. at 799. Although the case came before us on a motion to remand to state court rather than on a motion to dismiss, id. at 798, our reasoning as to the preemptive effect of § 301 is instructive here.

An analogous scenario faced the Seventh Circuit in Colgate-Palmolive, 943 F.2d at 764. In that case the plaintiff employees alleged in federal court that they had been fraudulently induced to leave jobs at their employer's New Jersey plant by an oral promise of permanent employment in Indiana. The promise arguably conflicted with the terms of a New Jersey CBA covering the employees. Id. at 765-66. Indiana law requires that the injured party "have the right to rely" on a false statement, Captain & Co., Inc. v. Stenberg, 505 N.E.2d 88, 96 (Ind. App. 4th Dist. 1987), and the district court held that the language of the New Jersey CBA would need to be interpreted to determine whether the plaintiffs had such a right of reliance. For this reason their fraudulent inducement claims were preempted under § 301. Colgate-Palmolive, 943 F.2d at 768-69. The Seventh Circuit agreed, concluding that "the fact finder's evaluation of reasonableness will inevitably require it to interpret the terms" of the CBA, id. at 769, and the plaintiffs' state law claims were therefore dismissed because they were preempted as "substantially dependent on analysis of a collective bargaining agreement." Id. at 770 (quoting Hechler, 481 U.S. at 859 n.3).

The primary circuit court decisions cited by Superior are significantly different from these cases. Both Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018 (6th Cir. 2001), and Operating Engineers Pension Trust v. Wilson, 915 F.2d

-12-

535 (9th Cir. 1990), dealt with short term project agreements which employers claimed they had been fraudulently induced into signing. The employer in <u>Wilson</u> alleged that he had been told that in order to continue working on a particular job he must sign the project agreement immediately even though he had never seen it before, 915 F.2d at 536; the Ninth Circuit concluded that the claim was not preempted because it could be resolved without interpretation of the agreement. <u>Id.</u> at 539. The project contracts in <u>Walcher & Fox</u> were not collective bargaining agreements but only incorporated terms from a CBA that the employer had not joined; the Sixth Circuit concluded that the claims "only tangentially involve(d) CBA provisions," and were therefore not preempted. <u>Id.</u> at 1030-31 (internal quotations omitted). Those agreements were not like the statewide CBA which Superior joined in either scope or duration. <u>See id.</u> at 1022-23. Unlike <u>Schuver</u> and <u>Colgate-Palmolive</u>, neither <u>Wilson</u> nor <u>Walcher & Fox</u> implicate the policy interest in uniform interpretation of collective bargaining agreements which underlies § 301 preemption. <u>See Lividas</u>, 512 U.S. at 121-22; <u>Lueck</u>, 471 U.S. at 210-11.

The case now before the court does implicate the policy interest behind § 301 preemption. As the Supreme Court explained in <u>Lueck</u>, "(i)f the policies that animate § 301 are to be given their proper range ... the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." <u>Id.</u> at 210. The <u>Lueck</u> plaintiff's common law fiduciary duty claims against his employer were preempted because the employer's obligations under state law were intertwined with obligations created by the relevant CBA which therefore had to be construed. <u>Id.</u> at 215. The CBAs in <u>Schuver</u> and <u>Colgate-Palmolive</u> had to be interpreted for a different reason to decide whether the plaintiffs could reasonably rely on a separate oral understanding they alleged; their claims were also preempted. 154 F.3d at 799; 943 F.2d at 769. A different result in any of these cases would have undermined the "interpretive uniformity and predictability" which Congress intended to foster with its passage of § 301. <u>Lueck</u>, 471 U.S. at 211. Superior's third party claims are likewise preempted, since whether Superior could justifiably rely on the oral assurances allegedly given it by the Union cannot be determined without construing the terms of the CBA.

Although Superior's third party complaint does not itself allege a violation of the CBA, this case is not one where "the meaning of contract terms (was) not the subject of dispute." <u>Lividas</u>, 512 U.S. at 124. This action began by the Trustees suing Superior for violation of its fringe benefit obligations under Article 23 of the CBA. Superior defended by asserting in its answer that it had relied on allegedly fraudulent assurances from the Union which conflicted with the written agreement, and in its third party action Superior seeks to use state law to hold the Union liable for its own contractual obligations to the fringe benefit fund. These state law claims are inextricably intertwined with the terms of the CBA, <u>Lueck</u>, 471 U.S. at 213, and their resolution is "substantially dependent on analysis" of it. <u>Colgate-Palmolive</u>, 943 F.2d at 770. If state tort law could be used to determine the meaning and effect of CBAs to evade compliance with their terms under federal law, the uniform system envisioned by Congress for their interpretation and enforcement would be disrupted. <u>See</u>, <u>e.g.</u>, <u>Lueck</u>, 471 U.S. at 211. Superior's third party claims, including those asserted by Paschke as an individual, are therefore preempted under § 301 and the claims were properly dismissed. <u>See</u> <u>Carlson</u>, 445 F.3d at 1049 n.2.

III.

Accordingly, the judgment of the district court is affirmed.

_____