# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2991

_____

Steven Gerhardson; Ron Hanek; Mike Johnson; Jim Costello

*Plaintiffs - Appellants*

v.

Gopher News Company, a Minnesota corporation

*Defendant - Appellee*

Central States, Southeast and Southwest Areas Pension Fund

*Defendant*

Local No. 638 of the Miscellaneous Drivers, Helpers & Warehousemen's Union
(International Brotherhood of Teamsters)

*Defendant - Appellee*

_____

No. 11-3089

_____

Steven Gerhardson; Ron Hanek; Mike Johnson; and Jim Costello

*Plaintiffs*

v.

Gopher News Company, a Minnesota corporation

*Defendant - Appellant*

Central States, Southeast and Southwest Areas Pension Fund

*Defendant*

Local No. 638 of the Miscellaneous Drivers, Helpers & Warehousemen's Union
(International Brotherhood of Teamsters)

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2012
Filed: November 6, 2012

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

Steven Gerhardson, Ron Hanek, Mike Johnson, and Jim Costello (collectively, drivers) were unionized delivery drivers covered by a collective bargaining agreement (CBA). The CBA established a pension plan operated by a third-party pension management firm. A dispute arose in 2006 after the drivers' employer and union re-negotiated the CBA. The drivers sued their employer, the union, and the pension management firm for various breaches of duty. On summary judgment motions, the

district court[1] found the drivers' claims were barred by the statute of limitations, 29 U.S.C. § 160(b), and later dismissed all other claims, including the employer's crossclaims against the union. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. Facts

Gopher News Company (Gopher News) operated a print media wholesale distribution business in the Minneapolis/St. Paul, Minnesota area. Gopher News' unionized workers were classified under two separate bargaining units—the drivers unit and the warehouse unit. Local No. 638 of the Miscellaneous Drivers, Helpers & Warehousemen's Union (International Brotherhood of Teamsters) (union) represented both units. Gerhardson, Hanek, Johnson, and Costello belonged to the drivers unit.

Central States, Southeast and Southwest Area Pension Fund (Central States) operated a defined benefit pension plan benefitting Gopher News employees. Upon retirement, the participants' monthly benefit payments under the plan depended on the age at which they retired and their term of service. Employees who retired after thirty years of service were eligible for the maximum monthly payment of approximately $3,000. Central States' plan included an "adverse selection" rule, which prohibited Gopher News from excluding younger workers from the plan.

Before 1992, both the drivers unit and the warehouse unit participated in the pension plan. In 1992, the warehouse unit elected to transition to a company-sponsored 401(k) plan, and Gopher News terminated the warehouse unit's pension

---

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

plan. Although Gopher News also encouraged the drivers unit to accept a 401(k) plan, the drivers unit chose to retain the pension plan.

During the 1990s, the print media distribution business changed, and, as a result, Gopher News needed fewer full-time drivers. Gopher News began hiring "combination" workers to perform both driving and warehouse duties. These combination workers were classified under the warehouse unit's CBA and did not participate in the drivers' pension plan. Because the combination workers were able to make deliveries, Gopher News stopped hiring full-time drivers. By 2008, the parties here indicate the four appellants were the only remaining active members of the drivers unit.

During 2005, Gopher News, the drivers, and the union renegotiated the drivers' CBA. Although Gopher News favored transition to a 401(k) plan, the drivers bargained to continue participating in the pension plan for six more years, at which time all four drivers would qualify for the thirty-year pension payments. The union, negotiating on behalf of the drivers, made maintaining the drivers' pension plan a priority. During these negotiations, Central States became concerned Gopher News was not complying with its obligations under the pension plan. Central States alerted the union it intended to audit Gopher News. The union asked Central States to delay the audit until after the parties ratified a new CBA. Central States agreed.

Gopher News, the union, and the drivers adopted a new CBA, effective June 1, 2005. On January 3, 2006, the union sent a copy of the new CBA to Central States. Two days later, Central States informed Gopher News that Central States would audit Gopher News to (1) "[i]dentify all eligible plan participants," and (2) "[v]erify that contributions were properly reported for all eligible plan participants." Central States ultimately concluded Gopher News' use of combination workers to perform driving functions violated the adverse selection rule.

-4-

On January 31, 2007, Central States announced it was terminating Gopher News' participation in the pension plan, effective February 25, 2007. The drivers each requested that Central States reconsider its termination decision. Central States denied the requests in a letter dated April 18, 2007, and denied the drivers' appeal of that decision in a letter dated June 20, 2007.

### B.     Procedural History

On December 12, 2006, Central States sued Gopher News in the United States District Court for the Northern District of Illinois.[2] The drivers moved to intervene on December 10, 2007, and the Illinois federal district court denied the motion on February 19, 2008. See Central States v. Gopher News, 542 F.Supp.2d 823, 829 (N.D. Ill. 2008).

On February 26, 2008, the drivers filed the present action against Gopher News, Central States, and the union. The drivers sued (1) Central States for breach of fiduciary duty, (2) the union for breach of the duty of fair representation, and (3) Gopher News for breach of contract and a violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1451. Gopher News filed a crossclaim against the union, alleging fraud and conspiracy and seeking declaratory judgment, indemnification, and contribution from the union for damages and costs incurred by Gopher News arising out of the union's alleged misconduct.

On March 31, 2011, the district court found the drivers' claims were untimely and granted summary judgment to Gopher News and the union on all of the drivers' claims. On August 29, 2011, the district court dismissed Gopher News' crossclaims against the union for lack of jurisdiction. The drivers appeal the dismissal of their claims and Gopher News cross-appeals the district court's denial of their crossclaims

---

[2]The Honorable William J. Hibbler, United States District Judge for the Northern District of Illinois.

against the union. All claims by or against Central States have been resolved, and are not relevant to this appeal.

## II. DISCUSSION

### A. Drivers

We review de novo the district court's grant of summary judgment on statute of limitations grounds, construing all evidence in the light most favorable to the non-moving party. See Roemmich v. Eagle Eye Dev., LLC, 526 F.3d 343, 348 (8th Cir. 2008). We will affirm the district court only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Roemmich, 526 F.3d at 348.

The drivers characterize their suit against Gopher News and the union as a "hybrid § 301/fair representation" claim arising out of § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163-65 (1983). The drivers' claim is governed by the NLRA's six-month statute of limitations. See id. at 169; see also NLRA § 10(b), 29 U.S.C. § 160(b). Such "claims accrue on the date the employee's grievance is finally rejected and his contractual remedies are exhausted." Craft v. Auto., Petrol. & Allied Indus. Emps. Union, Local 618, 754 F.2d 800, 803 (8th Cir. 1985). "When a grievance is 'finally rejected,' and when an employee has exhausted his contractual remedies obviously will vary depending upon the facts in any given case." Id. The district court agreed with the parties that "the last possible date on which the claim could have accrued" was June 20, 2007, when Central States denied the drivers' appeal of Central States' termination of the drivers' pension fund.[3] The drivers filed

---

[3]Like the district court, we do not decide whether the claim accrued before June 20, 2007.

their complaint in the present action on February 26, 2008. This suit commenced more than six months after the statute of limitations began to run.

The drivers argue the statute of limitations should be tolled for the period during which the drivers unsuccessfully sought to intervene in the Northern District of Illinois litigation. The drivers claim, "[t]he general rule is that the filing of a motion to intervene tolls the running of the statutes of limitation," and the district court erred in failing to apply this general rule in the present case.

The authorities the drivers cite do not support their position. The drivers rely on cases allowing *successful* motions to intervene to toll the limitations period for the successfully joined claims. See, e.g., United States ex rel Canion v. Randall & Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (explaining "the filing of the motion for intervention, and not the later approval of the motion and actual filing of the complaint, determines the commencement of the action for purposes of the statute of limitations"). The drivers' "reliance on Randall & Blake is misplaced. It is not the filing of the motion . . . which tolls the limitations period; rather, it is the fact that that motion is granted, establishing the intervenor as a proper party to the lawsuit, which renders the subsequent complaint timely." McIntosh v. Boatman's First Nat'l Bank of Okla., 103 F.3d 144, Case No. 95-5260, 1996 WL 685655, at *1 (10th Cir. 1996) (unpublished).

The district court concluded the drivers' untimely and unsuccessful motion to intervene should be treated, for tolling purposes, as a dismissal without prejudice, which does not toll the statute of limitations, citing Garfield v. J.C. Nichols Real Estate, 57 F.3d 662, 666 (8th Cir. 1995). See also McIntosh, 1996 WL 685655, at *1 ("The filing of a complaint that is dismissed without prejudice does not toll the statutory filing period."). We agree. An involuntary "[d]ismissal without prejudice operates to leave the parties as if no action had been brought at all. Following such dismissal the statute of limitations is deemed not to have been suspended during the

period in which the suit was pending." Moore v. St. Louis Music Supply Co., 539 F.2d 1191, 1194 (8th Cir. 1976). The same is true for a denied motion to intervene. See McIntosh, 1996 WL 685655, at *1.

> Although some . . . cases speak in terms of the filing of the motion to intervene "tolling" the statute of limitations, a more accurate description is that the date of filing of a successful intervention motion is taken to be the date the action is brought, for limitations purposes . . . . The rule would not seem to be applicable to a case, such as that presented here, in which intervention was denied and thus did not initiate the bringing of an action, and what is actually sought is the tolling of the statute of limitations for a new, different action brought subsequent to the denial of the motion to intervene.

Korwek v. Hunt, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986); accord In re Napster, Inc. Copyright Litig., No. C MDL-00-1369-MHP, C 04-3004 MHP, 2005 WL 289977, at *4-5 (N.D. Cal. Feb. 3, 2005).

The drivers suggest Korwek means something other than what it plainly says. The drivers fail to convince us the Korwek approach, which has been adopted by all the courts addressing the issue, is incorrect.

The drivers also propose we adopt the special tolling rule articulated by the Supreme Court in American Pipe & Construction Company v. Utah, 414 U.S. 538, 552-54 (1974), which has been applied exclusively to a limited group of class action plaintiffs in cases where the district court denies class certification. Cf. Stone Container Corp. v. United States, 229 F.3d 1345, 1354 (Fed. Cir. 2000) (explaining the American Pipe doctrine is "not based on judge-made equitable tolling, but rather on the [Supreme] Court's interpretation of Rule 23" of the Federal Rules of Civil Procedure, the rule governing the initiation of class action litigation in federal courts); Kreek v. Wells Fargo & Co., 652 F.Supp.2d 1053, 1060 (N.D. Cal. 2009) ("[T]he appellate courts have generally refused to extend the tolling doctrine in most

circumstances."). We decline to adopt this proposal for expanding the application of American Pipe.

The statute of limitations on the drivers' claim accrued no later than June 20, 2007, and the drivers did not initiate the present action until February 26, 2008. Because the drivers failed to establish equitable tolling applies, their complaint was untimely and the district court's summary judgment dismissal was proper.

### B. Gopher News

Gopher News argues the district court erred in dismissing Gopher News' crossclaims against the union. We disagree.

Under the preemption doctrine announced by the Supreme Court in San Diego Building Trades Council Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236 (1959), the National Labor Relations Board (NLRB) has exclusive jurisdiction over claims that "arguably" constitute unfair labor practices under §§ 7 or 8 of the NLRA. Id. at 245 (citing 29 U.S.C. §§ 157-58). Gopher News' claims of bad faith and misrepresentation against the union involve conduct arguably prohibited by the NLRA and therefore are subject to Garmon's preemption doctrine. See, e.g., Adkins v. Mireles, 526 F.3d 531, 542 (9th Cir. 2008) ("Because bargaining in bad faith is an unfair labor practice prohibited by NLRA §§ 7 and 8," the NLRB has exclusive jurisdiction.).

Gopher News makes two arguments as to why the district court erred in applying the doctrine of Garmon preemption to its claims. We reject both arguments.

### 1. LMRA § 301 Jurisdiction

First, Gopher News argues Garmon preemption is not relevant in this case because Gopher News asserted its claims against the union in connection with the drivers' § 301(a) claim to enforce the CBA. See, e.g., William E. Arnold Co. v.

Carpenters Dist. Council of Jacksonville & Vicinity, 417 U.S. 12, 16 (1974) ("[T]he Garmon doctrine is 'not relevant' to actions within the purview of § 301." (quoting Local 174 Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962))). Gopher News' argument is unavailing because its claims against the union are not "within the purview of § 301" for purposes of Garmon preemption.

Gopher News' argument is based on Textron Lycoming Recip. Engine Div., Avco Corp. v. United Auto., Aerospace, and Agric. Implement Workers of Am., 523 U.S. 653 (1998). In Textron, a labor union filed a federal court action for declaratory relief, arguing an employer had fraudulently induced the union to enter into a CBA. See id. at 655. The Supreme Court determined the claim was not actionable under § 301. See id. at 661-62. Noting § 301 explicitly grants federal courts jurisdiction to hear "suits for violation of contracts" between employers and unions, the Supreme Court held § 301 did not extend to suits seeking to invalidate, rather than to enforce, such a contract. See id. at 657.

Textron explicitly recognized it is sometimes appropriate for federal courts to consider the validity of CBAs, reasoning § 301(a)

> simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense. Similarly, a declaratory judgment plaintiff accused of violating a collective bargaining agreement may ask a court to declare the agreement invalid. But in these cases, the federal court's power to

> adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate "suits for violation of contracts."

Id. at 658 (quoting 29 U.S.C. § 185) (internal citation and marks omitted).

Gopher News argues its claims against the union enter court through Textron's "gateway," because the drivers' suit to enforce the collective bargaining agreement properly invoked the court's § 301(a) jurisdiction. However, Textron only permits a litigant to raise the validity of a contract as an affirmative defense; it does not allow such claims to be asserted offensively. See id. Textron relied solely on Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 85-86 (1982), which stated "only the [NLRB] may provide affirmative remedies for unfair labor practices, [but] a court may not enforce a contract provision which violates [federal law]." Id. at 86. Under Textron and Kaiser Steel, the invalidity of a contract may be raised defensively in a contract enforcement action, but federal courts are not authorized to provide other relief based on the same invalidity. Gopher News' claims against the union are subject to exclusive NLRB jurisdiction.

Gopher News suggests Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324 (8th Cir. 2006), supports jurisdiction over its claims. In Superior Waterproofing, Superior, an employer, was sued for allegedly violating a collective bargaining agreement, and Superior filed a third party complaint against the union for fraudulent inducement in negotiating the CBA. See id. at 326. At issue was whether Superior's state law fraud claim was preempted by § 301.[4] See id. at 329. Superior argued its third party complaint was not preempted because, under Textron, a claim of fraudulent inducement to enter into a CBA is distinct from a claim to enforce or interpret a CBA. See id. at 329-30. We rejected this argument because Superior's state law claims were "inextricably intertwined with

---

[4]Section 301 preemption is a distinct doctrine that is unrelated to Garmon preemption. See Superior Waterproofing, 450 F.3d at 330 n.5.

the terms of the CBA and their resolution [was] 'substantially dependent on analysis' of it." Id. at 334 (quoting Smith v. Colgate-Palmolive Co., 943 F.2d 764, 770 (7th Cir. 1991)) (internal citation omitted). We held Superior's claim was governed by § 301 and therefore not subject to Garmon preemption. See id. at 330 n.5, 334.

In Superior Waterproofing, we reasoned that "once any party to an action asserts a contractual violation there is broad subject matter jurisdiction under § 301 to adjudicate related issues of contract validity such as fraud." Id. at 330. While this passage would seem to support Gopher News' argument, interpreting this language too broadly would conflict with Kaiser Steel's holding that a claim such as Gopher News raises can only be raised defensively in federal court. See Kaiser Steel Corp., 455 U.S. at 86. Because Superior's third party complaint sought to enforce a contract under § 301, Superior Waterproofing did not decide the issue we face in this case. We will not interpret our precedent in a way that is inconsistent with binding Supreme Court authority.

The concurring opinion reasons that "[t]he district court reasonably understood Superior Waterproofing to mean that the court in that case had jurisdiction over the company's third-party complaint." Post at 16. We agree the district court's error is entirely understandable, given the broad language employed in the Textron and Superior Waterproofing opinions. But a reasonable misunderstanding is not sufficient to grant the district court subject matter jurisdiction over cases that fall under the exclusive jurisdiction of the NLRB. See, e.g., Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 n.3 (8th Cir. 2006) (explaining that in Garmon, 359 U.S. at 244-47, "the Supreme Court held that neither state nor federal courts have jurisdiction over claims arising under § 7 or § 8 of the NLRA").

The concurring opinion also states the district "court's jurisdiction over the cross-claims was at best supplemental under 28 U.S.C. § 1367," and "it was not an abuse of discretion for the court to decline the exercise of supplemental jurisdiction

-12-

over the cross-claims." Post at 17.  If the district court had supplemental jurisdiction under § 1367(a), it would have been an abuse of discretion to dismiss the claim without acknowledging Gopher News was entitled to re-file its claims in accordance with the tolling provision in 28 U.S.C. § 1367(d).  See Gerhardson v. Gopher News Co., Civil No. 08-537, 2011 WL 3837098, at *3-4 (D. Minn. Aug. 29, 2011) (rejecting Gopher News' attempt to analogize § 301 to § 1367 and deciding Gopher News' cross-claim was subject to mandatory dismissal).  The concurring opinion's acknowledgment that "the law permits a party to pursue its claims concurrently in federal court and before the [NLRB]" is irrelevant.  Post at 17.  If Gopher News' claims were subject to § 1367 jurisdiction, Gopher News did not need to preserve its claims by filing a parallel action before the NLRB.

## 2.    Exceptions to Garmon Preemption

Gopher News also contends well-recognized exceptions to Garmon's preemption doctrine provided the district court with jurisdiction over its claims.  See, e.g., Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25, 430 U.S. 290, 302 (1977) (explaining "inflexible application of the [Garmon] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme").  Gopher News fails to persuade us any such exceptions apply here.

Gopher News maintains preemption is unwarranted because there is no significant risk the district court would apply a rule of law that conflicts with the federal policies embodied in the NLRA.  See id. at 297 (recognizing preemption is not warranted "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes" (quoting Amalgamated Ass'n of Street, Elec. Railway, and Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 297-98 (1971)) (internal

-13-

quotation marks omitted)).  Gopher News reasons that, because the federal and state causes of action for fraud and misrepresentation "are indistinguishable," there is no risk of conflict.

Gopher News fails to recognize the present circumstances are precisely those in which the Garmon preemption doctrine is most suitably applied.  In Sears Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters, 436 U.S. 180, 197 (1978), the Supreme Court clarified Garmon preemption applies when "the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the [NLRB]."

> Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

Id. at 192-93 (quoting Garner v. Teamsters, Chauffeurs, & Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 490-91 (1953)).  Garmon preemption applies to Gopher News' claim precisely because the federal and state law causes of action are the same.  Congress has directed these claims be adjudicated before the NLRB, not in state or federal court.

Gopher News also proposes Garmon preemption does not apply because Gopher News never had a meaningful opportunity to present its claims before the NLRB.  See Sears Roebuck, 436 U.S. at 202-03 (recognizing Garmon preemption is less likely to apply where the party seeking to bring the claim in a court of law "has no acceptable means of" invoking the NLRB's jurisdiction).  Gopher News asserts its claims were compulsory counterclaims which Gopher News could not have

-14-

brought in a collateral action before the NLRB.  See Fed. R. Civ. P. 13(a).  Gopher News' claims are not counterclaims.  Rather, they are crossclaims, which the Federal Rules of Civil Procedure did not require Gopher News to join in the action below.  See id. (a), (g); see also Augustin v. Mughal, 521 F.2d 1215, 1216 (8th Cir. 1975) ("[C]ross-claims are merely permissive rather than compulsory.  Accordingly, a party to an action having a claim in the nature of a cross-claim has the option to pursue it in an independent action.") (internal citations omitted).  Gopher News has identified no compelling reason it could not have brought its claims against the union in an NLRB proceeding.

Gopher News fails to convince us this case satisfies any exception to Garmon preemption.

## III.    CONCLUSION

We affirm the decision of the district court.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in Parts I and II.A of the opinion of the court.  As for Part II.B, I would affirm the district court's dismissal of the cross-claims brought by Gopher News Company against the union, but on a narrower ground.

The district court understandably concluded at the outset of this case that the court had jurisdiction to adjudicate Gopher News's cross-claims. The plaintiff drivers brought a "hybrid § 301/fair representation" claim against Gopher News and the union, and properly invoked the district court's jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  Section 301 created an exception to the exclusive jurisdiction of the National Labor Relations Board to address unfair labor practices. *See Farmer v. Carpenters Local 25*, 430 U.S. 290, 297 n.8 (1977); *William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16 (1974).  In

*Textron Lycoming Recip. Engine Div., Avco Corp. v. UAW*, 523 U.S. 653 (1998), the Supreme Court declared that § 301 "erects a gateway through which parties may pass into federal court," and that "once they have entered, it does not restrict the legal landscape they may traverse." *Id*. at 657-58. That is, once parties have invoked a court's jurisdiction under § 301, the court has ancillary jurisdiction to adjudicate other matters that could not themselves be brought under § 301. *Id*. at 658.

This court in *Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324 (8th Cir. 2006), addressed whether a third-party complaint filed by Superior Waterproofing to allege fraudulent inducement by a union was preempted by § 301. The company argued that because *Textron* established that a claim of fraudulent inducement to sign a labor contract is not a "suit for violation of contracts" within the meaning of § 301, such a fraud claim is not preempted by § 301. *See Alongi v. Ford Motor Co.*, 386 F.3d 716, 725 (6th Cir. 2004). This court responded that *Textron* established that "once any party to an action asserts a contractual violation there is broad subject matter jurisdiction under § 301 to adjudicate related issues of contract validity such as fraud." 450 F.3d at 330. That was "precisely the case" in *Superior Waterproofing*, said this court, where Superior's fraudulent inducement claims were raised in answer to a complaint that alleged that Superior had breached a collective bargaining agreement with the union. *Id*. For that reason, this court ruled that *Textron* did not bar the union from asserting a preemption defense under § 301. *Id*.

The district court reasonably understood *Superior Waterproofing* to mean that the court in that case had jurisdiction over the company's third-party complaint alleging fraudulent inducement by the union, for otherwise this court's reference in *Superior Waterproofing* to jurisdiction "to adjudicate related issues of contract validity such as fraud," 450 F.3d at 330, would have been meaningless. And the district court logically thought it followed from *Superior Waterproofing* that the court in this case had jurisdiction over Gopher News's cross-claims alleging fraudulent

-16-

inducement by the union. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982), a case not cited by either party to this appeal, held that a court adjudicating a § 301 claim must entertain a defense that the contract at issue is illegal under the antitrust and labor laws. *Id*. at 85-86. Whether the district court in a § 301 case has jurisdiction over the sort of cross-claims or third-party complaint at issue here and in *Superior Waterproofing*, respectively, was not at issue in *Kaiser Steel*. There is dictum in *Kaiser Steel* to compete with more recent dicta in *Textron* and *Superior Waterproofing*, but it is an overstatement to say that *Kaiser Steel* rendered a "holding" that governs the district court's decision in this case. *Cf. ante*, at 12.

What is clear, however, is that any jurisdiction the district court properly exercised over Gopher News's cross-claims was "ancillary to, and not independent of, its power to adjudicate 'suits for violation of contracts.'" *Textron*, 523 U.S. at 658. As such, the court's jurisdiction over the cross-claims was at best supplemental under 28 U.S.C. § 1367. Once the district court dismissed the complaint of the drivers as untimely, it was not an abuse of discretion for the court to decline the exercise of supplemental jurisdiction over the cross-claims. *See Gerhardson v. Gopher News Co.*, No. 08-537, 2011 WL 3837098, at *4 (D. Minn. Aug. 29, 2011) (ruling in the alternative that "the Court declines to exercise [discretionary supplemental jurisdiction] since the entirety of plaintiffs' complaint has been dismissed"). Gopher News complains that dismissal of the cross-claims at a later stage of the litigation was unfair, because it is now too late for the company to bring its fraud claims before the National Labor Relations Board as alleged unfair labor practices. Yet the law permits a party to pursue its claims concurrently in federal court and before the Board. *See Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995). Gopher News, by relying at best on an assertion that the district court had ancillary jurisdiction over the cross-claims, assumed the risk that its claims might not be adjudicated in federal court if the underlying § 301 claim were dismissed. There is a tolling provision in 28 U.S.C. § 1367(d), which takes effect, where applicable,

whether or not the district court "acknowledge[s]" its existence in a dismissal order, *cf. ante*, at 13, but the company does not argue on appeal that it could benefit from that provision, and instead concedes that it is "past the point in time that . . . the NLRB could consider Gopher's allegations of fraud." *Cf. Jarmuth v. Frinzi*, No. 1:04CV63, 2006 WL 4730263, at *11 (N.D. W. Va. July 25, 2006). The district court was not compelled to retain supplemental jurisdiction over the cross-claims, and I therefore concur in the judgment.

———————————————